**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

DANIEL PERTI,

        Plaintiff,

    v.

McROBERTS PROTECTIVE AGENCY, INC.,

        Defendant.

Civil Action No. 14-7459 (MAS) (LHG)

**OPINION**

**SHIPP, District Judge**

This matter comes before the Court on Defendant McRoberts Protective Agency, Inc.'s ("Defendant" or "Company") motion to dismiss Plaintiff Daniel Perti's ("Plaintiff") complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. (ECF No. 13.) The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons stated below, Defendant's motion is granted in part and denied in part.

**I.    Background**

Plaintiff brings suit following the termination of his brief employment with Defendant. (*See generally* Compl., ECF No. 1-1.) Plaintiff alleges seven causes of action in his complaint: (1) interference with a contractual relationship or prospective economic advantage; (2) promissory estoppel; (3) two counts of fraudulent misrepresentation; (4) two counts of negligent misrepresentation; (5) breach of the implied duty of good faith and fair dealing; (6) wrongful discharge; and (7) equitable fraud.

Defendant is a privately held company that provides security services to a variety of industries, and Meredith McRoberts ("McRoberts") is its CEO. (Compl. ¶¶ 4, 16-17.) Prior to working for Defendant, Plaintiff served as Executive Vice President of Sales at a health consulting group, H.H.C. Group ("HHCG"). (*Id.* ¶ 14.) At McRoberts's instruction, Gail Levin ("Levin"), Internal Recruiter for Defendant, emailed Plaintiff to inform him that McRoberts and Mark Kosloski ("Kosloski"), President of the Technology Division, were interested in meeting with Plaintiff for an interview. (*Id.* ¶¶ 23-24.) Plaintiff had two interviews lasting roughly two hours each, during which McRoberts posed detailed questions regarding strategies for optimizing the Company's growth. (*Id.* ¶¶ 33, 50.) During his second interview, Plaintiff expressed concern that he would lose the bonus he was to receive from his current employment. (*Id.* ¶ 51.) In response, McRoberts stated, "That's money that you can walk away from," and generally represented that Plaintiff "would easily recoup the lost bonus by working for [Defendant]." (*Id.* ¶ 52.)

On July 1, 2014, Defendant offered Plaintiff a position as Senior Vice President of Sales and Marketing. (*Id.* ¶¶ 58-59.) The terms of Defendant's offer included a notice of at-will employment, a compensation rate of $165,000 per year, plus an uncapped performance-based variable component of $5,000 paid quarterly, and standard benefits. (*Id.* ¶¶ 60-61.) Plaintiff was required to sign a non-compete and non-disclosure clause, which prohibited Plaintiff from providing the same types of services he provided to Defendant or disclosing the Company's confidential information for two years within a specified geographic area. (*Id.* ¶¶ 62-64.) McRoberts indicated she wanted Plaintiff to attend the Port Security Seminar and Expo ("PSSE") in Baltimore, Maryland on July 16 and 17, 2014, which required Plaintiff to resign from his current position without giving two weeks' notice. (*Id.* ¶¶ 66-67.) On July 3, 2014, Plaintiff signed the offer letter and resigned from HHCG without giving two weeks' notice. (*Id.* ¶¶ 69-70.)

Plaintiff began working for Defendant on July 14, 2014. (*Id.* ¶ 72.) He traveled to Baltimore, Maryland on July 15, 2015, for the PSSE. (*Id.* ¶ 76.) While on a break during the PSSE, Plaintiff returned to his room to review his notes and read a novel. (*Id.* ¶ 99.) He unintentionally fell asleep and, as a result, was late for the next event on the itinerary. (*Id.* ¶¶ 99-101.) On July 17, 2014, Kosloski called Plaintiff and stated that Defendant was terminating his employment with the Company effective immediately because his position was defunded. (*Id.* ¶¶ 116-24.) Plaintiff asked Kosloski how he did not know during the hiring process that funds were not available for the position. (*Id.* ¶ 125.) Kosloski then changed his explanation and told Plaintiff was terminated for missing key events at the PSSE. (*Id.* ¶¶ 126-28.) Plaintiff received a termination letter, dated July 20, 2014, which stated that the Company terminated Plaintiff's employment on July 17, 2014. (*Id.* ¶ 145.) On July 28, 2014, Defendant deposited $2,538.46 into Plaintiff's account for the four days he worked. (*Id.* ¶ 148.)

## II. Legal Standard

Rule 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds on which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). On a motion to dismiss for failure to state a claim, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005).

A district court conducts a three-part analysis when considering a Rule 12(b)(6) motion. *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'take note of the elements a plaintiff must plead to state a claim.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court must accept as true all of a plaintiff's well-pleaded factual

3

allegations and construe the complaint in the light most favorable to the plaintiff. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). The court, however, must disregard any conclusory allegations proffered in the complaint. *Id.* For example, the court is free to ignore legal conclusions or factually unsupported accusations that merely state that "the-defendant-unlawfully-harmed-me." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Finally, once the well-pleaded facts have been identified and the conclusory allegations ignored, a court must next determine whether the "facts alleged in the complaint are sufficient to show that plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). The issue that a court must resolve in reviewing the sufficiency of a complaint is not whether a plaintiff will ultimately prevail but is instead limited to whether the claimant is entitled to offer evidence to support the asserted claims. *DeJoy v. Comcast Cable Commc'ns Inc.*, 941 F. Supp. 468, 473 (D.N.J. 1996).

Determining plausibility is a "context-specific task which requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. Plausibility, however, "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 545). In the end, facts that only suggest the "mere possibility of misconduct" fail to show that the plaintiff is entitled to relief. *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). Additionally, in evaluating a motion to dismiss, a court must consider only what is alleged in the complaint and any documents relied on in the complaint. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). In this case, because Plaintiff's employment agreement is relied on in his complaint, the Court considers it in evaluating Defendants' Rule 12(b)(6) motion.

When asserting fraud claims, a "plaintiff must satisfy the heightened pleading requirements of Federal Rule of Civil Procedure 9(b)." *Id.* at 1417. Rule 9(b) requires that, "the circumstances constituting fraud or mistake shall be stated with particularity." *Id.* (internal quotation marks omitted). "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). To meet this requirement, the plaintiff must plead or allege the "date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007).

The heightened pleading standard under Rule 9(b) provides defendants "notice of the precise misconduct with which they are charged," in order to give them an opportunity to respond meaningfully to a complaint, "and to safeguard defendants against spurious charges of immoral and fraudulent behavior." *Seville Indus. Mach. v. Southmost Mach.*, 742 F.2d 786, 791 (3d Cir. 1984). By giving defendants notice under this standard, Rule 9(b) provides an "increased measure of protection for their reputations, and reduces the number of frivolous suits brought solely to extract settlements." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1417. The Third Circuit has cautioned that "in applying the first sentence of Rule 9(b)[,] [that the complaint state with particularity the circumstances establishing the fraud,] courts must be sensitive to the fact that its application, prior to discovery, may permit sophisticated defrauders to successfully conceal the details of their fraud." *Christidis v. First Pa. Mortg. Trust*, 717 F.2d 96, 99-100 (3d Cir. 1983). Thus, courts should be flexible in applying the rule and mindful of requiring plaintiffs to plead issues that the defendants may have concealed. *See id.*

5

III. <u>Analysis</u>

    A.    **Interference with Contractual Relationship or Prospective Economic Advantage**

Plaintiff claims that Defendant's conduct in hiring him interfered with his employment with HHCG. A claim for tortious interference requires proof "that the defendant caused a third party to breach a contract" with the plaintiff. *Lo Bosco v. Kure Eng'g Ltd.*, 891 F. Supp. 1020, 1034 (D.N.J. 1995) (citing *Louis Schlesinger Co. v. Rice*, 4 N.J. 169, 180-81 (1950)).[1] Where "the plaintiff is the one induced to breach the contract, the tort of malicious interference is inapposite." *Id.* Here, Plaintiff alleges that Defendant induced him to accept the Senior Vice President of Sales and Marketing position with the Company, causing him to resign from HHCG. (Compl. ¶¶ 70, 154-55, 158.) Plaintiff has not alleged that Defendant caused a third party to breach a contract with him. Accordingly, Plaintiff has failed to state a claim for tortious interference with respect to his contractual relationship with HHCG, and this count is dismissed with prejudice.

    B.    **Promissory Estoppel**

Plaintiff asserts a claim for promissory estoppel based on Defendant's alleged promise that he would serve as the Company's Senior Vice President of Sales and Marketing. (*Id.* ¶ 163.) "To recover on a theory of promissory estoppel, plaintiff must prove that (1) there was a clear and definite promise; (2) the promise was made with the expectation that the promisee would rely upon it; (3) the promisee reasonably did rely on the promise; and (4) incurred a detriment in said reliance." *Swider v. Ha-Lo Indus., Inc.*, 134 F. Supp. 2d 607, 619 (D.N.J. 2001) (citing *Peck v. Imedia, Inc.*, 293 N.J. Super. 151, 165 (App. Div. 1996)). A claim for promissory estoppel provides recourse for unfulfilled yet relied upon promises. "The essential justification for the

---

[1] The Court possesses diversity jurisdiction over this matter. Accordingly, New Jersey law applies. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).

promissory estoppel doctrine is to avoid the substantial hardship or injustice which would result if such a promise were not enforced." *Pop's Cones, Inc. v. Resorts Int'l Hotel, Inc.*, 307 N.J. Super. 461, 469 (App. Div. 1998). New Jersey courts have applied the doctrine of promissory estoppel to circumstances where a prospective employee incurs expense in reliance on an at-will job offer but the employer withdraws the offer. In *Peck*, the court held that such a claim may arise even though the prospective employment was to be at-will—that is, the employment could be terminated at any time for almost any reason. *See* 293 N.J. Super. at 162, 167. In the context of this type of promissory estoppel claim, "[t]he estoppel may arise where there is [a] denial of a good faith opportunity to perform after a prospective employee has resigned from an existing position in reliance upon a firm job offer." *Bonczek v. Carter-Wallace, Inc.*, 304 N.J. Super. 593, 599 (App. Div. 1997).

Such a claim is inapplicable to the facts of this case. Here, Plaintiff's alleged promise was fulfilled. In Plaintiff's own words, Defendant promised Plaintiff "that he would serve as the [C]ompany's Senior Vice President of Sales and Marketing." (Compl. ¶ 163.) Defendant, however, never reneged on that promise; rather, based on the allegations in the complaint, Plaintiff began working for Defendant[2] but was terminated either because of his conduct at the PSSE or due to a lack of funding for the position. Although Plaintiff may have a suffered a detriment in leaving his position at HHCG, that detriment was not a result of an unfulfilled promise made by Defendant. *See Linn v. Beneficial Commercial Corp.*, 226 N.J. Super. 74, 80 (App. Div. 1988) (rejecting employee's estoppel claim based on "[t]he simple and overriding fact . . . that defendant kept every promise it made to plaintiff"). Further, Plaintiff's offer was not rescinded, as in *Peck*;

---

[2] Plaintiff asserts that, although he started working for Defendant prior to his termination (Compl. ¶ 72), he never "performed any of his substantive duties." (*Id.* ¶ 169.) This is a distinction without a difference.

7

instead, Plaintiff was provided "a good faith opportunity to perform" and then was terminated. *See Bonczek*, 304 N.J. Super. at 600. Accordingly, Plaintiff's promissory estoppel claim is dismissed with prejudice

### C. Fraud and Negligent Misrepresentation

Plaintiff asserts claims for both legal and equitable fraud and negligent misrepresentation. These claims are founded on two separate alleged misrepresentations: (1) that Defendant misrepresented that the Senior Vice President position was open and (2) that there was adequate funding for the position. To state a claim for legal fraud, a plaintiff must allege: "(1) a material representation by the defendant of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intent that the plaintiff rely upon it; (4) reasonable reliance by the plaintiff; and (5) resulting damage to the plaintiff." *Weil v. Express Container Corp.*, 360 N.J. Super. 599, 612-13 (App. Div. 2003) (citing *Jewish Ctr. of Sussex Cnty. v. Whale*, 86 N.J. 619, 624-25 (1981)). "In contrast, a plaintiff advancing a claim of equitable fraud need not demonstrate scienter . . . ." *Lightning Lube, Inc. v. Witco*, 4 F.3d 1153, 1183 (3d Cir. 1993) (citing *Whale*, 86 N.J. at 625). To sustain a claim for negligent misrepresentation, "a party must establish 'an incorrect statement, negligently made and justifiably relied on, that may be the basis for recovery of damages for economic loss sustained as a consequence of that reliance.'" *Nat'l Sec. Sys., Inc. v. Iola*, 700 F.3d 65, 108 (3d Cir. 2012) (quoting *Singer v. Beach Trading Co.*, 379 N.J. Super. 63, 73-74 (App. Div. 2005)).

#### 1. Misrepresentation of Open Position

Plaintiff's first set of fraud and negligent misrepresentation claims are based on the allegation that Defendant misrepresented that the Senior Vice President position "was open and the [C]ompany would hire [Plaintiff] to serve in that position." (Compl. ¶ 198.) All three causes

8

of action at issue require the showing of a false statement. As previously discussed, Plaintiff actually began working in the role that he claims was falsely misrepresented as open. Regardless of the reason for Plaintiff's termination, the allegations of the complaint unequivocally state that Plaintiff began working for Defendant in the role for which he applied and was hired. Plaintiff does not claim that Defendant misrepresented that Plaintiff would be employed for some specific duration, *see Shebar v. Sanyo Bus. Sys. Corp.*, 218 N.J. Super. 111, 117 (App. Div. 1987) (recognizing claim for fraud where employer promised indefinite employment prior to termination), nor could he, based on the at-will nature of his employment. Accordingly, Plaintiff's claims for fraud and misrepresentation based on the representation of the open position are dismissed with prejudice.

### 2. Misrepresentation of Adequate Funding

Plaintiff also asserts claims of fraud and negligent misrepresentation based on the allegation that Defendant misrepresented that it could pay the salary included in Plaintiff's offer letter. Plaintiff alleges that Defendant knew that it "could not afford to pay [Plaintiff]" when it interviewed and offered him the position. (Compl. ¶ 249.) Plaintiff asserts that Defendant "made a material misrepresentation that it knew to be false when [it] sent [Plaintiff] the Offer Letter" with salary and bonus information. (*Id.* ¶ 252.) This alleged misrepresentation is supported by Plaintiff's allegation that Kosloski first informed him that he was terminated due to lack of funding. Although Kosloski later offered an alternative basis for Plaintiff's termination, based on the allegations set forth in the complaint, it is at least plausible that the position was never funded. Plaintiff further alleges that Defendant intended that he rely on its representation of the salary in deciding to join the Company, which he did, and Plaintiff was damaged when he resigned from

9

HHCG. Based on these allegations, Plaintiff has sufficiently alleged claims of legal fraud, equitable fraud, and negligent misrepresentation.

### D. Implied Covenant of Good Faith and Fair Dealing

Plaintiff asserts that his termination breached the implied covenant of good faith and fair dealing. The implied covenant requires that "neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Borbely v. Nationwide Mut. Ins. Co.*, 547 F. Supp. 959, 973 (D.N.J. 1981) (citing *Palisades Props., Inc. v. Brunetti*, 44 N.J. 117, 130 (1965)). "[A]n implied obligation of good faith is applicable to those aspects of the employer-employee relationship which are governed by some contractual terms, even if the employment is characterized as being 'at-will.'" *King v. Port Authority of N.Y. & N.J.*, 909 F. Supp. 938, 942 (D.N.J. 1995) (citing *Nolan v. Control Data Corp.*, 243 N.J. Super. 420, 429 (App. Div. 1990)). Here, Plaintiff anchors the implied covenant to the restrictive covenants and bonus formulas contained within and attached to his offer letter. Assuming that those provisions create a contractual relationship between Plaintiff and Defendant, none of those provisions create an obligation vis-à-vis termination sufficient to "abrogate the employment at-will doctrine." *See id.* (dismissing claim for breach of the implied covenant based on a contract implied from an employee manual where manual did not include policy regarding termination). Accordingly, this claim is dismissed with prejudice.

### E. Wrongful Discharge

Plaintiff's complaint also asserts a claim for wrongful discharge. Plaintiff asserts that Defendant "wrongfully discharged [Plaintiff] when the [C]ompany terminated [him] for the purposes of binding him to an agreement with unreasonable non-compete and non-disclosure clauses." (Compl. ¶ 234.) "An employee has a cause of action for wrongful discharge when the

discharge is contrary to a clear mandate of public policy." *Pierce v. Ortho Pharm. Corp.*, 84 N.J. 58, 72 (1980). "The burden is on the employee to identify a specific expression of public policy that has been violated by his or her discharge." *O'Donnell v. Hennessey*, No. L-134-05, 2010 WL 45909, at *6 (N.J. Super. App. Div. Jan. 8, 2010) (citing *MacDougall v. Weichert*, 144 N.J. 380, 391 (1996)). Private contracts, however, such as non-compete agreements, which do not per se violate New Jersey law, do not support such a violation of public policy. *Maw v. Advanced Clinical Comm'ns, Inc.*, 179 N.J. 439, 448 (2004) (dismissing claim under the Conscientious Employee Protection Act, N.J.S.A. 34:19-3 ("CEPA")[3]). Here, where Plaintiff bases his claim of wrongful discharge on policy concerns related to a non-compete and a non-disclosure agreement—both private contracts that require a fact-specific inquiry to determine whether they violate public policy—Plaintiff's claim must fail, and the Court dismisses Plaintiff's claim for wrongful discharge with prejudice.

---

[3] The public policy requirement for *Pierce* claims is interpreted congruently with the public policy element of a CEPA claim. *See Mehlman v. Mobil Oil Corp.*, 153 N.J. 163, 180 (1998) ("[T]he caselaw determining the sources and characteristics of clear mandates of public policy for the purpose of applying the *Pierce* doctrine is also useful in defining the parameters of a CEPA claim.").

IV.     **Conclusion**

For the reasons set forth above, Defendant's motion to dismiss is granted in part and denied in part. With the exception of Plaintiff's claims for fraud and misrepresentation based on a representation of adequate funding, all claims are dismissed with prejudice. *See Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004) (stating a curative amendment need not be permitted where claim is futile). An order consistent with this Opinion will follow.

/s/ Michael A. Shipp
MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE

Dated: August 26, 2015